IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**VANESSA LOFTIS**                                                                                  **PLAINTIFF**

V.                                             **CASE NO. 5:23-CV-5228**

**WALMART, INC. f/k/a WAL-MART STORES, INC.**                          **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

Now before the Court are Defendant Walmart, Inc.'s Motion to Preclude the Testimony of Plaintiff's Expert David Rondinone (Doc. 41) and its Motion for Summary Judgment (Doc. 42).[1] This is a product liability case involving Walmart's sale of a pressure cooker that Plaintiff Vanessa Loftis claims injured her when the lid was able to be removed while the pressure cooker was—unbeknownst to her—still pressurized. For the reasons stated herein, the Court **DENIES** Walmart's Motions (Docs. 41 & 42).

In or around April 2021, Ms. Loftis purchased an Instant Pot Duo electronic pressure cooker from a Walmart store. (Doc. 50, ¶ 1; Doc. 55, ¶ 1). For eight months, Ms. Loftis used the pressure cooker nearly daily without incident. (Doc. 50, ¶ 2; Doc. 55, ¶ 2). On December 26, 2021, Ms. Loftis was cooking prime rib and vegetables in the pressure cooker. (Doc. 50, ¶ 3; Doc. 55, ¶ 3). She placed the ingredients in the cooker until it was half full, selected the "Meat" setting, and allowed the meal to cook for approximately twenty to thirty minutes. (Doc. 62, ¶ 3; Doc. 50-2, p. 57). Ms. Loftis testified that once the

---

[1] The Court has also considered the following filings: Walmart's brief in support of its *Daubert* Motion (Doc. 52); Ms. Loftis's response in opposition (Doc. 53); Walmart's reply (Doc. 64); as well as Walmart's statement of facts (Doc. 50); Walmart's brief in support of its Motion for Summary Judgment (Doc. 51); Ms. Loftis's response in opposition (Doc. 54); Ms. Loftis's response to Walmart's statement of facts (Doc. 55); Walmart's reply (Doc. 58); and Walmart's reply to Ms. Loftis's additional statement of facts (Doc. 62).

pressure-cooking program was complete, the pressure cooker was on the "Keep Warm" setting. (Doc. 50-2, p. 59). During the depressurization process, pressure cookers release steam; according to Ms. Loftis, the steam on that night "lasted forever," around thirty to forty-five minutes. (Doc. 62, ¶ 5; Doc. 50-2, p. 58). Ms. Loftis testified that she "kept checking on it, and then, when [the steam] finally did stop, that's when [she] opened it and it kind of blew up." (Doc. 62, ¶ 6; Doc. 50-2, p. 43). The contents of the cooker were ejected onto Ms. Loftis, causing burns to approximately 12% of her body, mostly on her abdomen, that later required debridement. Doc. 50, ¶ 3; Doc. 55, ¶ 3; *see* Doc. 50-2, pp. 73–74, 77–78, 80–81.

This model of pressure cooker utilizes a system that prevents a user from opening the lid while the unit is still under pressure. (Doc. 54-6, p. 31). The inside of the lid has a device called a "float valve" that, "[o]nce enough steam has built up inside the inner pot, . . . pops up and locks the lid of the cooker in place for safe pressure cooking." *Id.* The user manual includes the following:

> **⚠ CAUTION** Before each use, check the steam release valve/handle, steam release pipe, anti-block shield and float valve for clogging. Failure to do so may result in injury or property damage.

*Id.* at p. 7.

> **⚠ CAUTION** Do not fill over PC MAX – 2/3 as indicated on the inner pot. When cooking foods that expand during cooking such as rice or dried vegetables, do not fill the inner pot over –1/2 line. Overfilling may cause a risk of clogging the steam release pipe and developing excess pressure.

*Id.* at p. 6.

The parties do not seem to dispute that the unit was still under some amount of pressure when the contents erupted onto Ms. Loftis; however, the parties dispute how the lid was able to be removed while still under pressure. (Doc. 62, ¶ 4). According to Ms.

Loftis, this resulted from a defect—most likely, a design defect through which the float valve became clogged and prevented the lid from locking. Walmart denies the existence of any defect and suggests that Ms. Loftis's injury resulted from misuse.

According to Ms. Loftis, she cleaned the pressure cooker after every use, including wiping down the "float valve" to "get any debris out of it." (Doc. 50, ¶ 5; Doc. 55, ¶ 5). She never noticed any clogging or blockage of the float valve during prior uses. (Doc. 50, ¶ 6; Doc. 55, ¶ 6). She stored the pressure cooker on the counter in her kitchen, and she was not aware of it ever being dropped or damaged in any way. Doc. 50-2, pp. 29, 34–35; *see also id.* at p. 44 (Ms. Loftis explaining that a "gouge" seen in a picture of the pressure cooker occurred during the incident because the cooker "fell off the counter" "when it exploded"). The subject pressure cooker was lost when Ms. Loftis moved; she does not know whether it was discarded, so the experts in this case were unable to physically examine it. (Doc. 50, ¶ 8; Doc. 55, ¶ 8).

Ms. Loftis filed suit against Walmart bringing five counts: strict product liability under theories of manufacturing defect, design defect, and failure to warn; general negligence; negligent manufacturing defect; negligent design defect; and negligent information defect. (Doc. 2). In her Response to summary judgment, Ms. Loftis concedes her claims for manufacturing defect under both strict liability and negligence. Accordingly, her manufacturing defect theory for strict liability and her claim for negligent manufacturing defect are **DISMISSED**. The remaining issues before the Court are Walmart's Daubert Motion and its Motion for Summary Judgment.

## I. DAUBERT MOTION (Doc. 41)

### A. Legal Standard

The decision whether to exclude expert testimony is committed to a district court's discretion—subject, of course, to the Federal Rules of Evidence, including Rule 702. *Johnson v. Mead Johnson & Co., LLC*, 754 F.3d 557, 561 (2014). Rule 702 states that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

The Eighth Circuit has "boiled down" these requirements into a three-part test:

> First, evidence based on scientific, technical, or other specialized knowledge must be useful to the finder of fact in deciding the ultimate issue of fact. This is the basic rule of relevancy. Second, the proposed witness must be qualified to assist the finder of fact. Third, the proposed evidence must be reliable or trustworthy in an evidentiary sense, so that, if the finder of fact accepts it as true, it provides the assistance the finder of fact requires.

*Johnson*, 754 F.3d at 561 (quoting *Polski v. Quigley Corp.*, 538 F.3d 836, 839 (8th Cir. 2008)). The proponent of expert testimony bears the burden of showing by a preponderance of the evidence that these requirements are satisfied. *See Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 757–58 (8th Cir. 2006).

### B. Discussion

Walmart moves to exclude Ms. Loftis's expert, Dr. David Rondinone, arguing that his opinions are speculative, unreliable, and not tied to any applicable methodology.

4

Walmart appears to make three specific challenges to Dr. Rodinone's opinion: (1) that he proposes only "possible" causes of the incident with no basis in evidence; (2) that he did not physically test the subject cooker or an exemplar; and (3) that he did not rule out alternative causes. The Court disagrees with Walmart.

Dr. Rondinone holds a Ph.D and an M.S. in Mechanical Engineering from U.C. Berkeley and has worked as a mechanical engineer with Berkeley Engineering And Research, Inc. ("BEAR") for over twenty years. (Doc. 53-7, p. 2). This work includes a variety of design and failure analyses, extending to pressure vessels. *Id.* Dr. Rondinone stated in his deposition that he has been retained in approximately 300 electronic pressure cooker lawsuits, and he estimated that about one to two dozen of those have involved Instant Pots specifically. (Doc. 52-5, pp. 16–17). He has provided deposition or trial testimony in approximately thirty pressure cooker cases since 2018. *See* Doc. 53-7, pp. 10–27. Walmart does not challenge Dr. Rondinone's qualifications as an expert, and the Court's review of his curriculum vitae shows that he is qualified to serve as an expert in this matter.

Dr. Rondinone proposes three potential causes of the accident: (1) a float valve clog, resulting from an inadequately designed float valve, that caused the lid to remain unlock while under pressure; (2) a boil-over event that was not properly warned against; or (3) a failure of the interlocking sliding mechanism.

### 1. *"Possible Causes"*

The Court starts its analysis with Walmart's argument that Dr. Rodinone posits only "possible," rather than "probable" causes of the accident and fails to ground these in facts. Contrary to Walmart's argument, Dr. Rondinone identifies a float valve clog as the "most

likely scenario" and "would say to a degree of reasonable engineering certainty it's more likely a clogged or insufficient float valve interlock event" caused Ms. Loftis's injuries "than . . . a boil-over event." Doc. 52-5, pp. 97, 132; *see also id.* at p. 95 ("Yes, I believe that [a boil-over event] is the less likely of the scenarios, but I would not rule it out."). Dr. Rondinone explains that, based on Ms. Loftis's description that she was able to rotate the lid with "relative ease," he believes this was a "low pressure event . . . under 2 psi," which is most consistent with a float valve clog. *Id.* at p. 81. He describes that, although it was a relatively low-pressure event, it required enough energy to eject the contents onto Ms. Loftis and that is less consistent with a boil-over event, which would probably be "less than half psi[ ] because the ejection force" in a boil-over event "comes from the pressure that's trapped in . . the pocket of heated fluid." *Id.* at p. 94; *see also id.* at p. 96 ("[B]oil-over events . . . are less energetic, not very much material escapes from the cooker, in general, so it's harder to achieve the burns."). Dr. Rondinone clarifies in his deposition that a failure of the interlocking sliding mechanism is less likely as well because, based on his prior research in other cases, Instant Pot pressure cookers have a strong sliding mechanism in the interlock system when compared to other manufacturers. *Id.* at p. 132.

Dr. Rondinone's deposition makes clear that he intends to testify that the incident was *most likely* caused by a clogged float valve, as supported by his expertise, prior testing of pressure cookers, examination of Instant Pots, and Ms. Loftis's description of the incident. "Only if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded." *Bonner v. ISP Techs., Inc.*, 259 F.3d 924, 929–30 (8th Cir. 2001) (citation omitted). The Court will not exclude Dr. Rondinone on this basis.

### *2. Physical Testing*

While Walmart concedes that it was not possible for Dr. Rondinone to test the subject pressure cooker in this case, as it was not available, it argues that his failure to conduct tests using an exemplar model is unjustified and renders his testimony inadmissible. "Where physical testing is not feasible, observations coupled with expertise generally may form the basis of an admissible expert opinion." *Allstate Indem. Co. v. Dixon*, 932 F.3d 696, 701 (8th Cir. 2019). Here, Dr. Rondinone explained that in order to help him gain a more precise determination on probability as to whether this was a float valve incident, he would have had to run "an extensive statistical study, probably hundreds of tests," and he has not "know[n] anybody who ever has" done that. (Doc. 52-5, p. 97). Further, he explained that it is "difficult to repeat" a clogged float valve, but his lab has "done tests for clogging on other models of pressure cooker" and shown that a user "can with a single use clog the vent," *id.* at p. 89, which he reports "present[s] a risk of pressurization with the lid in an unlocked state." (Doc. 52-3, p. 9).

Indeed, Walmart's cited cases are distinguishable from Dr. Rondinone's opinion here. Walmart cites to *Moe v. Hyster-Yale Grp., Inc.*, 2022 WL 4000541 (D. Minn. Sept. 1, 2022). In *Moe*, an expert provided three opinions regarding the failure of a forklift brake pedal, one of which was excluded. *Id.* There, similar to here, the expert "decided against using physical testing—for example, recreating the brake pedal assembly—because laboratory testing would not accurately replicate real-world use, and the manufacturing variables may have produced unreliable data." *Id.* at *1. The excluded opinion—that brake's spring fractured due to rubbing—was deemed inadmissible because it did "not present such a circumstance [where an expert can rely on observations without physical

7

testing] because he *hypothesized on assumed facts*," contrary to the scientific method. *Id.* at *4 (emphasis added). Indeed, the expert had assumed the position of the spring within the brake pedal system, and he admitted that he had not observed the expected rubbing marks during his inspection. *Id.* at *2. The court, therefore, noted that "[n]o known fact indicated the spring rubbed against the brake retention tab other than the spring's fracture and its general vicinity." *Id.* The court's exclusion of the expert's rubbing theory was not wholly predicated on the lack of physical testing, however. The court permitted expert's opinion as to the cause of brake's failure despite the lack of physical testing, reasoning that although the expert was "unable to recreate the brake pedal assembly and thus was unable to test how the brake pedal worked with a broken spring," his conclusion was "permissible expert testimony" because it "coupled his observations about the brake assembly and the compression spring with his engineering expertise." *Id.* at *4.

Here, Dr. Rondinone's opinion that the float valve was clogged is supported by Ms. Loftis's description of the incident and his prior testing of pressure cookers, not "unfounded assumptions." *Id.* at *4 (citation omitted). Thus, like the admissible opinion in *Moe*, though Dr. Rondinone is "unable to recreate" the incident, his opinion is "based on known facts and his expertise." *Id.* (citing *Dixon*, 932 F.3d at 701).

Dr. Rondinone's opinion is distinct from the "vague theorizing based upon general principles" that the Eighth Circuit took issue with in *Pro Service Automotive, L.L.C. v. Lenan Corp.*, 469 F.3d 1210, 1216 (8th Cir. 2006), and the untested chain of "mini-theories" that the Western District of Kentucky excluded *Honaker v. Innova, Inc.*, 2006 WL 3702270, at *1 (W.D. Ky. Dec. 12, 2006), another pressure cooker case. Despite the fact that Dr. Rondinone did not *test* the subject pressure cooker or an exemplar model in this

case, "[t]here is no single requirement for admissibility as long as the proffer indicates that the expert evidence is reliable and relevant." *Russell v. Whirlpool Corp.*, 702 F.3d 450, 456–57 (8th Cir. 2012) (citations omitted). Dr. Rondinone's conclusions are "based on his experience and expertise [in pressure cooker cases], general engineering principles, information from [Ms. Loftis] about the accident, examination of [an exemplar cooker], its design and specifications, competitors' [cookers], and photos of the accident," including of the subject pressure cooker and Ms. Loftis's burns. *Klingenberg v. Vulcan Ladder USA, LLC*, 936 F.3d 824, 829 (8th Cir. 2019); *see* Doc. 52-3, p. 5 (Dr. Rondinone's report stating he reviewed exemplar cookers, photos of the subject cooker, photos of the injuries, medical records, and various legal documents); *id.* at pp. 10–11 (including photos of competitor designs and warnings).

### 3. Alternatives

Lastly, Walmart challenges the admissibility of Dr. Rondinone's opinion on the argument that he failed to rule out other possible causes. Walmart is correct that an expert's "ability to rule out other possibilities" is a "factor commonly applied to the determination of admissibility." *Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 693 (8th Cir. 2001) (citation omitted). This factor is often used "when addressing an expert opinion on causation arrived through a differential diagnosis," meaning one that is "performed by 'ruling in' all scientifically plausible causes of the plaintiff's injury," then "'rul[ing] out' the least plausible causes of injury until the most likely cause remains." *Id.* at 693 n.7 (internal quotation marks and citations omitted). Importantly, while an expert "should 'adequately account[ ] for obvious alternative explanations,'" the expert "need not rule out all possible causes of an injury." *Redd v. DePuy Orthopaedics, Inc.*, 700 F. App'x 551, 554 (8th Cir.

9

2017) (quoting Fed. R. Evid. 702 advisory committees note to 2000 amendment). Indeed, even when an expert's testimony "would enable other possible theories of the event to exist such as an accident," his testimony is not precluded under this factor. *Lauzon*, 270 F.3d at 694. Once obvious alternatives are discounted, the expert's ability to rule out other causes goes to weight, not admissibility. *Id.*

Here, Dr. Rondinone does engage with alternative explanations, including a boil-over event, a failed sliding mechanism, or some other accident like a spill. He then applies his expertise in the mechanics of pressure cookers to the facts in this case to deduce that a float valve clog was the most likely mechanical scenario here. Regarding the possibility of a spill, he states that "physically it's probably possible," but he would "have to disregard [Ms. Loftis's] entire testimony, though, from start to finish for that to be true," including "disbeliev[ing] her explanation of the removal of the lid and how the contents came out." (Doc. 52-5, p. 120). Admittedly, Dr. Rondinone refuses to say with absolute certainty that a float valve clog occurred here, but he does conclude the most likely cause within a "degree of reasonable engineering certainty." *Id.* at p. 97. Dr. Rondinone's refusal to completely rule out other alternatives goes to the weight of his testimony, not its admissibility.

\* \* \*

In sum, Dr. Rondinone's opinion is sufficiently "reliable or trustworthy in an evidentiary sense, so that, if the finder of fact accepts it as true, it [will] provide[ ] the assistance the finder of fact requires." *Johnson*, 754 F.3d at 561 (citation omitted). "[A]n expert need not wear a lab coat nor cite peer-reviewed studies to reliably lend his expertise to the trier of fact—experience is an equally valuable teacher." *Artis v. Santos*,

95 F.4th 518, 526 (7th Cir. 2024). Nor is an expert required to rule out all possible alternatives for his testimony to be admissible. *Redd*, 700 F. App'x at 554 (quoting Fed. R. Evid. 702 advisory committees note to 2000 amendment). Therefore, the Court **DENIES** Walmart's Motion to exclude Dr. Rondinone.

## II.  MOTION FOR SUMMARY JUDGMENT (Doc. 42)

### A.  Legal Standard

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Subpart (a) to Rule 56 provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In considering a motion for summary judgment, the Court must review the facts in the light most favorable to the opposing party and give that party the benefit of any inferences that logically can be drawn from those facts. *Canada v. Union Elec. Co.*, 135 F.3d 1211, 1212–13 (8th Cir. 1998).

### B.  Discussion

Walmart's primary contention is that, should Dr. Rondinone's opinion be excluded, Ms. Loftis would have insufficient proof to make her case thereby entitling Walmart to judgment as a matter of law. However, the Court has refused to exclude Dr. Rondinone's opinion, so Walmart is left only with its argument that Ms. Loftis has failed to adequately rule out causes other than the purported defect. The Court disagrees and, therefore, denies summary judgment.

Under Arkansas law, a plaintiff in a product liability suit bears the burden of proving that "a defect in design or manufacture . . . was a proximate cause of [her] injury." *Higgins v. Gen. Motors Corp.*, 250 Ark. 551, 555 (1971); *Campbell Soup Co. v. Gates*, 319 Ark. 54, 59 (1994). This requires showing that the "product was in a defective condition at the time it left the hands of the particular seller." *Higgins*, 250 Ark. at 555 (citing Restatement (Second) Torts, § 402A, cmt. (g)); *Campbell Soup*, 319 Ark. at 59. "In the absence of direct proof that the product is defective because of a manufacturing flaw or inadequate design, plaintiff must negate the other possible causes of failure of the product for which the defendant would not be responsible in order to raise a reasonable inference that the dangerous condition existed while the product was still in the control of the defendant." *Higgins*, 250 Ark. at 555 (citation omitted); *Campbell Soup*, 319 Ark. at 59.

To start, these rules do not appear to be entirely applicable in this case. Here, the specified defect—an inadequately designed float valve—could not have occurred after the product left Walmart's control. A comparison with *Campbell Soup* makes this lack of fit apparent. In *Campbell Soup*, the only evidence to support that the alleged defect—bugs in packaged noodles—existed at the time it left the manufacturer was testimony that the bugs were found in the noodles after they were cooked. 319 Ark. at 60. The Arkansas Supreme Court held that this evidence was insufficient to show that the product was in defective condition *at the time it left the defendant manufacturer* because the bugs could have gotten into the packaging later in the distribution process. *Id.* at 60–62. This is not the case here where a design defect would have been present at the time Walmart sold the product to Ms. Loftis.

12

Nevertheless, assuming Ms. Loftis was required to eliminate other possibilities, the Court believes she has done so. As already discussed, Dr. Rondinone identified what he believed—based on the facts and his expertise—to be the most likely cause and why the other possible causes he identified were less likely. *See Pioneer Civ. Const., LLC v. Volvo Const. Equip. N. Am.*, Inc., 2009 WL 1690358, at *2 (E.D. Ark. June 16, 2009) (holding the plaintiff had sufficient evidence to survive summary judgment where the plaintiff's expert opined as to "the most likely cause of the fire" and the plaintiff "discounted the other potential causes of the fire"). Additionally, Ms. Loftis testified that on the night of the incident she did not overfill the Instant Pot, she had it on the Keep Warm setting, she allowed it to depressurize for thirty to forty-five minutes, she waited until the steam stopped, and she did not force open the lid. More generally, her testimony shows that the Instant Pot was not damaged, it was stored on her counter, she cleaned it regularly, she was familiar with the instructions and warnings, and she was an experienced user—evidence that eliminates various other possibilities.

Moreover, this case is distinct from those where plaintiffs have failed to adequately eliminate other possibilities, such as ordinary wear and tear, misuse, or where the plaintiff's expert opines that multiple possibilities are equally likely. *See, e.g.*, *Martin v. E-Z Mart Stores, Inc.*, 464 F.3d 827, 830–31 (8th Cir. 2006) ("With no evidence supporting the negation of other causes such as wear and tear or misuse, the [plaintiffs] have not made a case for the trier of facts."); *Wise Co. v. Dixie-Narco, Inc.*, 2006 WL 20775, at *3–4 (E.D. Ark. Jan. 4, 2006) (finding that the plaintiff failed to provide evidence eliminating other possible causes like wear and tear or misuse and noting "[the] machine was in use over five years," "was transported back and forth throughout Arkansas," and "was installed

13

and used in three different manufacturing facilities," so it was "just as likely, if not more so, that the connection loosened while the machine was being transported, installed, or while in use [rather than being a defect]."); *Boatmen's Trust Co. v. St. Paul Fire & Marine Ins.*, 995 F. Supp. 956, 960, 962 (E.D. Ark. 1998) (granting summary judgment where "[i]t [was] clear that all of the plaintiffs' experts believe that the most likely cause of the mishap was a misplaced or displaced tube and not the delivery of too little oxygen from the machine [i.e., the defect]," and only one expert believed the defect and the other causes were "equally possible"); *Miaoulis as Next Friend of Lopez v. Toyota Motor N. Am., Inc.*, 2021 Ark. App. 19, 8 (2021) (affirming the directed verdict where the expert could not "distinguish likelihood between the three" modes of failure because "[a]ll three [were] equally likely").

Here, Ms. Loftis's pressure cooker was relatively new at the time of the incident, and she has provided evidence to support that it was in good condition and appropriately used. And here, as fully discussed in this Order, Dr. Rondinone has designated a float valve clog as the *most* likely scenario. Therefore, Ms. Loftis has provided evidence that, when viewed in light most favorable to her, negates other possibilities. Walmart, therefore, has not shown that it is entitled to judgment as a matter of law. Accordingly, the Motion for Summary Judgment is **DENIED**.

### III.     CONCLUSION

**IT IS HEREBY ORDERED** that Walmart's Daubert Motion (Doc. 41) is **DENIED**, and Walmart's Motion for Summary Judgment (Doc. 42) is **DENIED**. Per Plaintiff's concession, her manufacturing defect theory for strict liability and her claim for negligent manufacturing defect are **DISMISSED**.

**IT IS SO ORDERED** on this 2nd day of June, 2025.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE